1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SARAH L. HOBBS,                    No.  2:20-cv-02323 AC

12              Plaintiff,

13        v.                            **ORDER**

14   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

20   of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

21   plaintiff's motion for summary judgment is GRANTED, defendant's cross-motion for summary

22   judgment is DENIED, and the matter will be remanded to the Commissioner for further

23   proceedings.

24                      I.  PROCEDURAL BACKGROUND

25        On April 16, 2002, plaintiff was found disabled based on bipolar disorder beginning

26   September 15, 2001, and eligible for Title II, Social Security Disability Insurance (SSDI)

---

[1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); <u>Bowen v. City of New York</u>, 476 U.S. 467, 470 (1986).

1   benefits.  Administrative Record ("AR") 24 (ECF No. 12-22).[2]  The agency then found on June

2   27, 2018, that plaintiff's disability had ceased.  Id.  Plaintiff appealed that decision and

3   participated in a hearing before Administrative Law Judge (ALJ) Carol Buck on November 7,

4   2019.  AR 42-66 (hearing transcript).  Plaintiff, her attorney Kevin LaPorte, and vocational expert

5   Scott Neilson participated in the hearing.  AR 43.  By decision dated January 23, 2020, ALJ Buck

6   affirmed that plaintiff's disability ceased on June 27, 2018.  AR 21-36 (decision).  Plaintiff timely

7   requested review of the ALJ's decision by the Appeals Council, but on September 23, 2020, the

8   Appeals Council denied the request.  AR 1-6.  This action resulted in the ALJ's decision

9   becoming the final order of the Commissioner.

10          Plaintiff filed this action on November 20, 2020.  ECF No. 1; see 42 U.S.C. § 405(g).  The

11   parties consented to the jurisdiction of the magistrate judge.  ECF No. 18.  The parties' cross-

12   motions for summary judgment, based upon the Administrative Record filed by the

13   Commissioner, have been fully briefed.  ECF Nos. 15 (plaintiff's summary judgment motion), 16

14   (Commissioner's summary judgment motion), 17 (plaintiff's reply).

15                                    II.  FACTUAL BACKGROUND

16          Plaintiff was born in 1970, and accordingly was, at age 49, a younger person under the

17   regulations at the time of the decision at issue.[3]  AR 21, 67.  Plaintiff has at least a high school

18   education and can communicate in English.  AR 85, 256.  Plaintiff has past work as a barista,

19   electrical apprentice, elder care provider, massage therapist, admin, and university lab assistant.

20   AR 224.

21                                      III.  LEGAL STANDARDS

22          The Commissioner's decision that a claimant is not disabled will be upheld "if it is

23   supported by substantial evidence and if the Commissioner applied the correct legal standards."

24   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

25   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

26   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

27   _____

[2]  The AR is electronically filed in OCR (searchable) format at ECF No. 12-22 and 12-23 (AR 1
28   to AR 2456).
[3]  See 20 C.F.R. § 404.1563(c) ("younger person").

1    Substantial evidence is "more than a mere scintilla," but "may be less than a

2    preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such

3    evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

4    Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the

5    record can constitute substantial evidence, only those 'reasonably drawn from the record' will

6    suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

7    Although this court cannot substitute its discretion for that of the Commissioner, the court

8    nonetheless must review the record as a whole, "weighing both the evidence that supports and the

9    evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,

10   846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

11   court must consider both evidence that supports and evidence that detracts from the ALJ's

12   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

13   "The ALJ is responsible for determining credibility, resolving conflicts in medical

14   testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

15   Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of

16   which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

17   278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

18   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

19   v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

20   2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

21   evidence that the ALJ did not discuss").

22   The court will not reverse the Commissioner's decision if it is based on harmless error,

23   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

24   ultimate nondisability determination.'" Robbins v. Commissioner, 466 F.3d 880, 885 (9th Cir.

25   2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

26   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

27                          IV. RELEVANT LAW

28   Disability Insurance Benefits and Supplemental Security Income are available for every

1    eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff

2    is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically

3    determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

4    (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

5           In the initial determination, the Commissioner uses a five-step sequential evaluation

6    process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R.

7    §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth

8    the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).

9    Where a claimant has been previously determined to be disabled and the Commissioner is

10   determining whether the disability continues, an eight-step process is used. 20 CFR 404.1594.

11          At step one, the Commissioner must determine if the claimant is engaging in substantial

12   gainful activity. If the claimant is performing substantial gainful activity and any applicable trial

13   work period has been completed, the claimant is no longer disabled (20 CFR 404.1594(f)(1)).

14          At step two, the Commissioner must determine whether the claimant has an impairment or

15   combination of impairments which meets or medically equals the criteria of an impairment listed

16   in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). If

17   the claimant does, her disability continues (20 CFR 404.1594(f)(2)).

18          At step three, the Commissioner must determine whether medical improvement has

19   occurred (20 CFR 404.1594(f)(3)). Medical improvement is any decrease in medical severity of

20   the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings

21   (20 CFR 404.1594(b)(1)). If medical improvement has occurred, the analysis proceeds to the

22   fourth step. If not, the analysis proceeds to the fifth step.

23          At step four, the Commissioner must determine whether medical improvement is related

24   to the ability to work (20 CFR 404.1594(f)(4)). Medical improvement is related to the ability to

25   work if it results in an increase in the claimant's capacity to perform basic work activities (20

26   CFR 404.1594(b)(3)). If it does, the analysis proceeds to the sixth step.

27          At step five, the Commissioner must determine if an exception to medical improvement

28   applies (20 CFR 404.1594(f)(5)). There are two groups of exceptions (20 CFR 404.1594(d) and

4

(e)).  If one of the first group exceptions applies, the analysis proceeds to the next step.  If one of the second group exceptions applies, the claimant's disability ends.  If none apply, the claimant's disability continues.

At step six, the Commissioner must determine whether all the claimant's current impairments in combination are severe (20 CFR 404.1594(f)(6)).  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.  If they do, the analysis proceeds to the next step.

At step seven, the Commissioner must assess the claimant's residual functional capacity based on the current impairments and determine if she can perform past relevant work (20 CFR 404.1594(f)(7)).  If the claimant has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the last step.

At step eight, the undersigned must determine whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience (20 CFR 404.1594(f)(8)).  If the claimant can perform other work, she is no longer disabled.  If the claimant cannot perform other work, her disability continues.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated April 16, 2002 (Exhibit 2F, 3F, 25F). This is known as the "comparison point decision" or CPD.

> 2. At the time of the CPD, the claimant had the following medically determinable impairments: bipolar disorder. These impairments were found to result in a marked limitation in her psychological functioning.

> 3. [Step 1] As of the CDP of April 16, 2002 and through the date of this decision, the claimant has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that since the cessation date of June 27, 2018, the claimant has had the following medically determinable impairments: fibromyalgia, sleep apnea, depression, bipolar disorder, anxiety, migraines, osteoarthritis, back pain, GERD, history of alcohol abuse, urinary incontinence, chronic body pain, bilateral arm weakness, dry eyes syndrome, and CIDP. These are the claimant's current impairments.

5. [Step 2] Since the cessation date of June 27, 2018, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. [Step 3] Medical improvement occurred on cessation date of June 27, 2018 (20 CFR 404.1594(b)(1)).

7. [Step 4] The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

8. [Step 6] Since the cessation date of June 27, 2018, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

9. [Step 7] Based on the impairments present since the cessation date of June 27, 2018, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except stand and/or walk for 6 hours; sit for 6 hours but able to change positions every three hours; no ladders, ropes and scaffolds and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl; frequently bilateral reaching overhead, handle, finger, push and pull; no hazards (heights and machinery) and frequent exposure to dusts, fumes, and other environmentalist; simple work tasks; occasional public contact with is superficial in nature; and occasional contact with coworkers and supervisors.

10. The claimant has no past relevant work (20 CFR 404.1565).

11. On the cessation date of June 27, 2018, the claimant was a younger individual age 18- 49 (20 CFR 404.1563).

12. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

13. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

14. [Step 8] Since the cessation date of June 27, 2018, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present since June 27, 2018, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

15. The claimant's disability ended on June 27, 2018, and the claimant has not become disabled again since that date and through

6

1    the date of this decision (20 CFR 404.1594(f)(8)).

2    AR 24-36.

3    As noted, the ALJ concluded that plaintiff was "not disabled" under the Act as of June 27,

4    2018.  AR 36.

5    VI.  ANALYSIS

6    Plaintiff alleges that the ALJ erred by (1) improperly rejecting medical opinions; (2)

7    improperly rejecting plaintiff's testimony; (3) improperly rejecting lay witness testimony; and (4)

8    failing to support her Step-Eight finding with substantial evidence.  ECF No. 15 at 4.  Plaintiff

9    requests that the matter be remanded to the Commissioner for an immediate award of benefits or,

10   at a minimum, for further administrative proceedings.  Id. at 13.  Because the Step-Eight

11   argument is derivative of plaintiff's other assertions of error, it is not addressed.

12   A.      The Medical Evidence

13   Plaintiff argues the medical opinion evidence, specifically the opinions of treating

14   physician Dr. Adam Rubenstein and examining psychologist Dr. Molly Malone, was improperly

15   considered with respect to her mental health claims.  With respect to the reevaluation, the ALJ

16   considered the relevant mental-health related medical opinions of (1) agency psychological

17   consultant Julia Wood, Ph.D., (2) agency psychiatric consultant D. Lucila, M.D., (3) consultative

18   examining psychologist Molly Malone, Psy. D., and (4) treating physician Adam Rubenstein,

19   M.D.  AR 32-34.

20   a.      The Opinion of Dr. Wood

21   On May 24, 2018, Julia Wood, Ph.D., non-examining agency psychological consultant,

22   reviewed the medical record, and opined that plaintiff had moderate limitations in interacting with

23   others and concentrating, persisting or maintaining pace, but mild limitations in understanding,

24   remembering, and applying information, and adapting and managing oneself.  AR 74-75.  Dr.

25   Wood further opined that plaintiff could perform simple/unskilled tasks in a low demand work

26   setting.  AR 78.  Dr. Wood noted that records from March 2018 indicated that "plaintiff was

27   currently doing well from a psychological perspective and does not require further psychological

28   intervention outside of her regular follow-up with her psychiatrist."  AR 74.

7

The ALJ reviewed Dr. Wood's opinion together with the opinion of non-examining agency psychiatrist Dr. Taylor, who made similar observations. AR 28. The ALJ concluded that "both opined the claimant that [sic] significant medical improvement related to her ability to work had occurred; and their opinions are given great weight as it is consist with and supported by the overall mental health records from the claimant's CDP of April 16, 2002 to her cessation date of June 27, 2018 that showed medical improvement and the capacity to perform at least a light level of work activity." Id.

   b. <u>The Opinion of Dr. Lucila</u>

On September 25, 2018, D. Lucila, M.D., agency psychiatric expert, reviewed the updated medical record, and opined that plaintiff had moderate limitations in performing detailed instructions, maintaining concentration for extended period, working in proximity to others without distraction, completing a normal work week, interacting with the public, and responding to changes in the work setting. AR 2081-83. Dr. Lucila further opined that plaintiff's mental impairments did not meet or medically equal a listing, AR 2088, and that plaintiff had medically improved, AR 2080. The ALJ assigned Dr. Lucila's opinion "great weight" finding it was "based on his review of the overall mental health records from the claimant's cessation date of June 27, 2018 consisting of mental health treatment records, therapy sessions and objective mental status examinations." AR 33.

   c. <u>The Treatment and Opinion of Dr. Rubenstein</u>

On October 4, 2018, Dr. Rubenstein filled out a State general assistance form stating that Plaintiff was permanently unable to work due to her bipolar disorder. AR 2177. On October 18, 2018, Natalia Estrada, ASW and Dr. Rubenstein co-wrote a letter stating that plaintiff has been a patient in their clinic for 19 years, receiving medication management, therapy, and case management support. AR 2178. They stated plaintiff's symptoms vary depending on the most recent episode but that the baseline is manic, that she experiences manic episodes, difficulty concentrating, lack of insight, low stress tolerance, and difficulty interacting with others. AR 2178. Plaintiff's manic episodes include disorganized thoughts, rapidly switching from one idea to the next, pressured and loud speech, hyperactivity, and a decreased need for sleep. Id. They

8

noted plaintiff was anxious and could become agitated around others, and that her bipolar

disorder negatively impacted her ability to adjust to or handle even the simplest changes, which in

turn resulted in significant stress and an inability to meet basic job expectations.  Id.  They opined

that plaintiff could not perform any work for at least 12 months though likely several years.  AR

2178-79.

The ALJ found that "both SW Estrada's statement and Dr. Rubenstein's opinion were

based solely on the claimant's subjective complaints as her statements regarding her being totally

disabled and unable to work as there are no North County Mental Health records in the file from

the claimant's cessation date of June 27, 2018."  AR 34.  Finding the opinion "not supported by

the mental health records from the cessation date of June 27, 2018[,] which showed the claimant

was currently doing well from a psychological perspective" the ALJ assigned "little weight to SW

Estrada's statements and Dr. Rubenstein's opinion."  AR 34.

d.  The Examination and Opinion of Dr. Malone

Plaintiff presented to Molly Malone, Psy.D., for a consultative psychological examination on July

9, 2019.  AR 2302.  Plaintiff appeared friendly and interacted appropriately with Dr. Malone.  AR

2303.  Plaintiff was properly oriented; spoke normally, appeared anxious, exhibited a normal

affect, exhibited an adequate fund of knowledge and abstraction, and exhibited fair recent

memory.  AR 2304.  Testing resulted in a Full-Scale IQ in the low average range, but the score

was invalid due to the large discrepancy between plaintiff's verbal comprehension (average to

high average) and working memory scores (low average to borderline).  AR 2305-06.  Separate

memory testing indicated that plaintiff would "have no significant deficits with remembering

simple and/or complex work tasks."  AR 2306.  Dr. Malone's diagnostic impression included

Bipolar 1 Disorder in partial remission, unspecified anxiety disorder with panic attack, and

unspecified personality disorder with cluster B personality traits.  AR 2307.  The prognosis was

"fair with continued mental health interventions" and Dr. Malone noted plaintiff's "deficits in

social and work functioning are significant."  Id.

In her report, Dr. Malone opined that plaintiff had mild difficulty in performing detailed

tasks; moderate to marked difficulty in interacting with others; and would have difficulty

9

maintaining regular attendance.  AR 2299-2300.  Dr. Malone identified chronic interpersonal difficulties, poor personal distress tolerance, tendency to become easily overwhelmed, [and] limited coping skills" as the factors contributing to her assigned limitations.  AR 2300.  She also noted that plaintiff would have difficult with regular attendance due to her unpredictable mood and anxiety symptoms.  Id.  The ALJ stated that Dr. Malone's opinion was "given little weight as it is inconsistent with her own findings and are not supported by her 07/09/2019 examination consisting of her direct examination, observations, mental status examination, and psychological test results.  Rather, it appears her opinion was primarily based on the claimant's subjective complaints."  AR 33.

B. <u>Principles Governing the ALJ's Consideration of Medical Opinion Evidence</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.[4]  <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995), <u>as amended</u> (Apr. 9, 1996).

> Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

<u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).  "The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations."  <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).

However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so.  <u>Regennitter v. Comm'r of</u>

---

[4]  There have been recent updates to the rules on medical sources; this section of the code applies to claims filed before March 27, 2017.  <u>See</u> 20 C.F.R. § 404.1527.  Plaintiff's claims were filed prior to 2017 and are therefore not impacted by the changes.

1   Soc. Sec. Admin., 166 F.3d 1294, 1298–99 (9th Cir. 1999) ("Even if contradicted by another

2   doctor, the opinion of an examining doctor can be rejected only for specific and legitimate

3   reasons that are supported by substantial evidence in the record.").

4       C.   The ALJ Erred in Rejecting Dr. Rubenstein's and Dr. Malone's Opinions

5          The ALJ found that treating physician Dr. Rubenstein's opinion was "based solely on the

6   claimant's subjective complaints as her statements regarding her being totally disabled and unable

7   to work [sic] as there are no North County Mental Health records in the file from the claimant's

8   cessation date of June 27, 2018." AR 34. The ALJ stated that examining physician Dr. Malone's

9   opinion was "given little weight as it is inconsistent with her own findings and are not supported

10  by her 07/09/2019 examination consisting of her direct examination, observations, mental status

11  examination, and psychological test results. Rather, it appears her opinion was primarily based

12  on the claimant's subjective complaints." AR 33. When an ALJ rejects the opinion of a treating

13  or examining physician, she must give "specific and legitimate reasons" for doing so.

14  Regennitter, 166 F.3d at 1298-99.

15         Here, the undersigned finds that the ALJ's improperly rejected the opinions of Dr.

16  Rubenstein and Dr. Malone on grounds they were based on plaintiff's subjective complaints. The

17  ALJ did not cite any evidence to support the assertion that these doctors relied *solely* on

18  plaintiff's subjective reports in forming their opinions, as opposed to a combination of plaintiff's

19  reported symptoms with their own observations and professional experience. In Ryan v.

20  Commissioner of Social Security, 528 F.3d 1194 (9th Cir. 2008), the Ninth Circuit noted that a

21  diagnosis of a mental impairment is not invalidated merely because the diagnosing doctor records

22  the patient's own reports. "[A]n ALJ does not provide clear and convincing reasons for rejecting

23  an examining physician's opinion by questioning the credibility of the patient's complaints where

24  the doctor does not discredit those complaints and supports his ultimate opinion with his own

25  observations." Ryan, 528 F.3d at 1199-1200.

26         Dr. Malone noted plaintiff presented with an anxious mood (AR 2304) and found that

27  while plaintiff "purports to have posttraumatic stress disorder, she does not report symptoms

28  consistent with this diagnosis. However, her early childhood trauma does appear to have

negatively impacted her abilities to form and maintain interpersonal relationships and cope with stressors." AR 2307. This language indicates that Dr. Malone did not simply regurgitate plaintiff's self-report; she made her own assessment after working through various psychological tests and personally interacting with plaintiff. The ALJ's rejection of Dr. Rubenstein is likewise unsupportable. Through the ALJ notes that there were no medical notes from Dr. Rubenstein's clinic in the file post June 27, 2018, it does not follow that Dr. Rubenstein's assessment is based solely on plaintiff's self-reports rather than the doctor's nearly two-decade long treating relationship with plaintiff. AR 34. It was error for the ALJ to leap to the conclusion that these doctors, who were the only two to examine plaintiff with respect to her mental health complaints, based their opinions solely on plaintiff's subjective reports.

D. The ALJ Erred in Rejecting Portions of Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ improperly discounted her testimony regarding the severity of her symptoms without giving clear and convincing reasons for doing so. The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony...simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).

"The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same

1  time, the ALJ is not required to believe every allegation of disabling pain, or else disability

2  benefits would be available for the asking[.]"  Molina, 674 F.3d at 1112 (citation omitted).  "The

3  ALJ must specifically identify what testimony is credible and what testimony undermines the

4  claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir.

5  2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In

6  weighing a claimant's credibility, an ALJ may consider, among other things, "inconsistencies

7  either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimaint's] daily

8  activities, [her] work record, and testimony from physicians and third parties concerning the

9  nature, severity, and effect of the symptoms of which [claimant] complains."  Thomas v.

10  Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (alterations in original).  "If the ALJ's credibility

11  finding is supported by substantial evidence in the record, [the court] may not engage in second-

12  guessing."  Id. at 959.  However, "an ALJ may not reject a claimant's subjective complaints

13  based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."

14  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

15      Here, plaintiff challenges the rejection of her testimony indicating that she is often

16  suicidal, has difficulty focusing and concentrating, needs her sister to help her absorb information

17  at medical appointments, has panic attacks in response to stress, and is so fatigued that she must

18  take at least two naps every day for up to two hours at a time.  AR 49-56.  Plaintiff notes that the

19  vocational expert testified that unscheduled absences at that level would preclude employment.

20  AR 65.  However, when the ALJ summarized plaintiff's testimony, she stated that "the claimant

21  alleges that because of her current impairments, the claimant is unable to work due to the

22  functional limitations caused by her physical and mental impairments.  The claimant alleges

23  difficulty with lifting, standing, walking, stair climbing, seeing, memory, completing tasks,

24  concentration, understanding, and using hands."  AR 29.  In evaluating plaintiff's subjective

25  testimony, the ALJ credited her statements "only to the extent they can reasonably be accepted as

26  consistent with the objective medical and other evidence."  Id.

27      While the ALJ did address specific medical testimony that undermined many of plaintiff's

28  subjective complaints, the undersigned finds error specifically with the failure to address

13

1  plaintiff's statement that she needs to nap twice daily for two hours each day. The ALJ supported

2  her partial rejection of plaintiff's subjective testimony by finding there is a "lack of objective

3  medical evidence" to support it, but she did not address plaintiff's testimony about spending up to

4  4 hours each day napping. Because this testimony could very well impact plaintiff's

5  employability, particularly given the vocational expert testimony regarding unscheduled

6  absences, it was error not to address it.

7       E. The ALJ Erred in Rejecting Lay Witness Testimony

8       Plaintiff argues the ALJ improperly discredited her sister Laura Fiske's lay witness

9  testimony. Lay testimony as to a claimant's symptoms or how an impairment affects the

10  claimant's ability to work is competent evidence that the ALJ should take into account. <u>See</u> SSR

11  06-3p, 2006 WL 2329939 (Aug. 9, 2006). However, "[a]n ALJ need only give germane reasons

12  for discrediting the testimony of lay witnesses." <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218

13  (9th Cir. 2005). Here, the ALJ stated that "Ms. Fiske's third-party statements regarding

14  functional limitations are not consistent with medical opinions of record, the objective findings

15  and the record as a whole. The lack of substantial support from the other evidence of record

16  renders it less persuasive." AR 34. Because the undersigned found the ALJ improperly

17  discredited the opinion testimony of two physicians and portions of plaintiff's subjective

18  testimony, the ALJ's generalized rejection of this lay witness testimony is not supportable and

19  cannot be deemed harmless. The ALJ did not provide germane reasons for rejecting the

20  testimony of Ms. Fiske.

21       F. The ALJ's Error Necessitates Remand for Further Consideration

22       As discussed, the ALJ erred in rejecting the opinions of two physicians, as well as the

23  testimony of plaintiff and her sister Ms. Fiske. An error is harmful when it has some consequence

24  on the ultimate non-disability determination. <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050,

25  1055 (9th Cir. 2006). The ALJ's error in this matter was harmful; properly considering all the

26  limitations assessed by her treating an examining physicians, as well as her own testimony and

27  the lay witness testimony, may very well result in a more restrictive residual functional capacity

28  assessment, which may in turn alter the finding of non-disability. The court finds remand for

1  further consideration to be the appropriate remedy because the ALJ's analysis was deficient, but

2  the extent to which the various testimony should be credited is for the ALJ to determine in the

3  first instance.  <u>Treichler v. Comm'r of Soc. Sec</u>., 775 F.3d 1090, 1099 (9th Cir. 2014) ("the

4  proper course, except in rare circumstances, is to remand to the agency for additional

5  investigation or explanation").  The undersigned finds that in this case, additional administrative

6  review would be useful.

7  VII.  CONCLUSION

8       For the reasons set forth above, IT IS HEREBY ORDERED that:

9       1.  Plaintiff's motion for summary judgment (ECF No. 15), is GRANTED;

10       2.  The Commissioner's cross-motion for summary judgment (ECF No. 16), is DENIED;

11       3.  This matter is REMANDED to the Commissioner for further consideration consistent

12  with this order; and

13       4.  The Clerk of the Court shall enter judgment for plaintiff and close this case.

14  DATED: February 15, 2022

15

16  ALLISON CLAIRE
   UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28